NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LEMONT LOVE, | : | |
| Plaintiff, | : | Civil Action No. 09-01665 (JAP) |
| v. | : | **OPINION** |
| MONROE TOWNSHIP, et al., | : | |
| Defendants. | : | |

PISANO, District Judge.

This civil rights action is brought by plaintiff Lemont Love ("Plaintiff") against defendants Monroe Township (the "Township"), Monroe Police Department (the "Department", and together with the Township, the "Moving Defendants") and John Does 1-10. Presently before the Court is a motion for summary judgment by the Moving Defendants. The motion is unopposed. The Court decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth herein, the motion for summary judgment is granted.

**I.     Factual Background[1]**

Plaintiff filed this action in connection with his arrest in the Township of Monroe, New Jersey on December 12, 2006. Plaintiff's complaint states claims under New Jersey state law, alleging that certain unnamed police officers assaulted him during his arrest and that the Moving

---

[1] Unless otherwise noted, all citations in this section are to the exhibits attached to the Certification of Kevin G. Boris, Esq.

Defendants acted negligently in their hiring, employment, supervision and training of such police officers.  Plaintiff also states claims under the United States Constitution pursuant to 42 U.S.C. § 1983 for violation of his civil rights.

Plaintiff's brother, Jerrold Love, was killed in a work-place accident on December 12, 2006.  (Exhibit A, 9:11 to 10:23).  Later that same day, Plaintiff and his relatives gathered at their family home in Monroe Township, New Jersey.  (Exhibit A, 11:11 to 11:17).  Plaintiff got into an verbal argument with his brother, Andre Love.  (Exhibit A, 11:17 to 11:18; Exhibit B, 14:14 to 14:17; Exhibit C, 29:25).  In an effort to end the argument, Plaintiff's father, Robert Love, called the police to report the domestic disturbance and to have Plaintiff escorted off the property.  (Exhibit A, 12:5 to 12:16; Exhibit B, 14:14 to 14:17).

Officers Banos, Livingston, Mariano, Martinez, Painter, Silvestri, Strych and Sergeants Biennas and Taylor (the "Responding Officers") were dispatched to investigate the domestic disturbance.  (Exhibit D, Mariano Report).  When Officer Mariano arrived at the scene, she saw Plaintiff standing next to a car in the driveway of the home with a glass bottle of Jack Daniels Whiskey in his right hand and a two liter plastic bottle of Coca-Cola under his right arm. (Exhibit D, Mariano Report).  Officer Mariano ordered Plaintiff to put the bottles down several times, but Plaintiff continuously refused to do so.  (Exhibit A, 13:3 to 13:11; Exhibit C, 32:13 to 32: 15; Exhibit D, Mariano Report).

When Officer Mariano attempted to physically remove the bottles from Plaintiff's possession, Plaintiff grabbed Officer Mariano's wrist and began pushing her and punching in her direction.  (Exhibit D, Mariano Report, Martinez Report, Biennas Report).   Officers Banos, Mariano, Martinez, Livingston, Silverstri and Sergeant Biennas attempted to restrain Plaintiff and secure the bottles, but Plaintiff continued to punch and kick at the police officers.  (Exhibit

D, Mariano Report, Banos Report, Martinez Report, Biennas Report). Eventually, Officer Banos was able to handcuff Plaintiff and place him into custody. (Exhibit D, Banos Report, Martinez Report, Biennas Report).

Plaintiff was taken to police headquarters and charged with (1) obstructing the administration of law, (2) assault on a law enforcement officer / aggravated assault and (3) resisting arrest. (Exhibit D, Mariano Report; Exhibit E). While being processed, Plaintiff requested medical attention, complaining of pain in his shoulder, ankle and eye. (Exhibit D, Mariano Report, Biennas Report). Monroe First Aid Department evaluated Plaintiff at police headquarters. (Exhibit G). The medical records indicate that Plaintiff complained of pain in the shoulder, ankle and eye, but that there were no obvious deformities or bleeding at that time. (Exhibit G). Plaintiff was subsequently transferred to Old Bridge Regional Hospital for evaluation, where diagnostic testing revealed no fractures, dislocations or other osseous abnormalities in his eye, ankle or shoulder. (Exhibit H). Plaintiff was released from Old Bridge Regional Hospital with instructions for treatment of "acute alcohol intoxication", "muscle strain", the "use of acetaminophen" and the "use of over-the-counter ibuprofen." (Exhibit H).

Ten days later, on December 22, 2006, Plaintiff visited the Centra State Hospital Family Medicine Residency Center complaining of "back pain and difficultly walking." (Exhibit I). The medical records indicate that Plaintiff was told to that "ice, rest and NSAIDs" would help the soft tissue swelling and was given a theraband and a home exercise program for his ankle. (Exhibit I). On February 21, 2007, Plaintiff visited Dr. Mark Donlon complaining that he was seeing flashes of light in his right eye. (Exhibit J). The medical records from this appointment indicate that Plaintiff was diagnosed with astigmatism and declined glasses. (Exhibit J). Plaintiff's medical records also indicate that he visited Dr. Matthew Sorkin, D.D.S. on several

occasions including on February 28, 2007, for a new patient evaluation, and on March 3, 2007, for an endodontic therapy (root canal).  (Exhibit K).

The Moving Defendants filed the instant motion for summary judgment on October 29, 2010.  With respect to Count I of the complaint, the Moving Defendants argue that they are immune from liability under the New Jersey Tort Claims Act and that the record lacks any basis for Plaintiff's claims that the entities acted negligently in their hiring, retention and / or training of the Responding Officers.  The Moving Defendants further argue that there is no evidence to support Count II of the Plaintiff's complaint, which alleges that the Moving Defendants violated his civil rights under the United States Constitution.

## II.     Summary Judgment Standard

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The substantive law identifies which facts are critical or "material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact raises a genuine dispute "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party.  *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial.  *Id.* at 324.  The non-moving party must offer admissible evidence that establishes a genuine issue of material fact, *id.*, not just "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  If

the non-moving party fails to respond to the moving party's assertion of fact, the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

Plaintiff's failure to oppose the motion does not automatically entitle the Moving Defendants to summary judgment. Rather, where the non-moving party fails to respond, the Court may "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3); *see Anchorage Assoc. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) ("If the adverse party does not . . . respond, summary judgment, if appropriate, shall be entered against the adverse party.")(citations omitted).

**III.   Legal Analysis**

A.   State Law Claims against the Moving Defendants

Plaintiff's complaint states several state law causes of action against the Moving Defendants. (Complaint, Count I). First, Plaintiff's complaint appears to state claims against the Moving Defendants for the injuries caused by the Responding Officers within the scope of their employment. The general rule in New Jersey is that "a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or

any other person", except as provided by the New Jersey Tort Claims Act (the "Tort Claims Act"). N.J.S.A. 59:2-1(a). The Tort Claims Act provides that a public entity can be "liable for injury proximately caused by an act or omission of a public employee within the scope of his employment." N.J.S.A. 59:2-2(1). This section is the primary source of public entity liability, in that "[i]t establishes the principle of vicarious liability for all public entities for 'injury proximately caused by an act or omission of a public employee within the scope of his employment' and thereby relies upon the established principles of law such as the doctrine of *respondeat superior*." *Wright v. State,* 169 N.J. 422, 435 (2001) (quoting Comment to N.J.S.A. 59:2-2).

However, New Jersey law also precludes municipal liability for intentional torts committed by police officers. *See* N.J.S.A. 59:2-2(b) ("[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct."); *Hoag v. Brown*, 397 N.J. Super. 34, 54 (App.Div.2007) ("there can be no vicarious liability by a public entity for intentional torts committed by its employees; that is, with respect to such intentional torts, the theory of respondeat superior does not apply." (citing *McDonough v. Jorda,* 214 N.J.Super. 338, 350 (App.Div.1986))). The complaint alleges that John Does 1—10 "unlawfully and viciously" assaulted Plaintiff. (Complaint, Count I). Because the Moving Defendants cannot be held vicariously liable for the intentional torts of the Responding Officers, the Court finds that the Moving Defendants are entitled to judgment as a matter of law.

Plaintiff's complaint also alleges that the Township negligently hired and / or retained the Responding Officers. The Tort Claims Act imposes liability on a public entity "for injury proximately caused by an act or omission of a public employee within the scope of his

employment in the same manner and to the same extent as a private individual under like circumstances."  N.J.S.A. 59:2-2(1).  New Jersey recognizes a cause of action for negligent hiring and / or retention of employees in the private sector under the theory of *respondeat superior*.  *Di Cosala v. Kay,* 91 N.J. 159, 174 (1982).  Therefore, under New Jersey law, a municipality can be held liable for its own negligence in hiring or retaining a police officer.  *Denis v. City of Newark*, 307 N.J.Super. 304, 312-314 (App.Div.1998).  In order to prevail under this theory, a plaintiff must show that the municipality knew or should have known of the police officer's dangerous propensities and the risk of injury he or she presents to the public.  *Id*. at 314.  "[L]iability may exist against a public entity under the Tort Claims Act for its negligent retention of a police officer who presents a clear public danger."  *Id.*

The Moving Defendants have provided evidence showing that, before hiring each of the Responding Officers, the Department conducted a four-part certification process that included: a criminal history background check, a motor vehicle driving record check, a physical exam and a psychological exam  (Certification of Lt. Michael Lloyd ("<u>Lloyd Cert</u>"), paragraph 7).  Each of the Responding Officers successfully completed this four-part certification process. (Lloyd Cert, paragraph 8).  In addition, the Department's personnel records do not indicate that the Responding Officers have dangerous propensities or pose a risk of injury to the public. (Lloyd Cert, paragraph 12).  Plaintiff has not produced any evidence to rebut these facts or otherwise prove that the Moving Defendants negligent hired and / or retrained the Responding Officers. The Court finds that there is no genuine dispute as to whether the Township knew or should have known that the Responding Officers had dangerous propensities or that any of them presented a risk of injury to the public and the Moving Defendants are entitled to judgment as a matter of law.

Plaintiff's complaint further alleges that the Moving Defendants failed to adequately train the Responding Officers. New Jersey recognizes a cause of action for failure to adequately train police officers. *See McAndrew v. Mularchuk*, 33 N.J. 172, 184 (1960) (holding that, when arming their police officers with weapons, municipal entities must use "care commensurate with the risk to see to it that such persons are adequately trained or experienced in the proper handling and use of the weapons they are to carry."). A municipality can be held liable where the injury "is chargeable to the lack of training or experience." *Id.* The Moving Defendants point to evidence showing that the Department's training policies are consistent with the New Jersey Attorney General's Use of Force Policy, which requires "semi-annual training for all officers concerning the lawful and appropriate use of force and deadly force." (Lloyd Cert, Exhibit B, Article II). Pursuant to this Use of Force Policy, the Department conducts Use of Force Training twice a year, after which each police office must successfully complete a Use of Force Examination. (Lloyd Cert, paragraphs 17 and 18). The evidence shows that each of the Responding Officers attended and completed this training and examination. (Lloyd Cert, Exhibit C). Plaintiff, on the other hand, has not produced any evidence showing that his injuries are chargeable to the Responding Officers' lack of training or experience. The Court finds that there is no genuine dispute as to whether the Responding Officers were adequately trained by the Moving Defendants.

B.     Constitutional Claims against the Moving Defendants

Count II of Plaintiff's complaint states claims against the Moving Defendants under the United States Constitution pursuant to 42 U.S.C. § 1983. This section does not create any new substantive rights, but instead provides a remedy for violations of rights conferred in the Constitution or other federal statutes. *Doe v. Delie*, 257 F.3d 309, 314 (3d Cir. 2001) (citing

*Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a violation of a right secured by the Constitution or federal law; and (2) that the violation of that right was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

In order to establish municipal liability against the Moving Defendants, Plaintiff must prove that the deprivation of his civil rights was the result of a policy statement, ordinance, regulation or decision officially adopted and promulgated by the municipality's officers or pursuant to a governmental custom. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978); *Brown v. Muhlenberg Tp.*, 269 F.3d 205, 215 (3d Cir. 2001); *Santiago v. Warminster Tp.*, 629 F.3d 121, 135 (3d Cir. 2010). The Supreme Court has held that a municipality can be subjected to § 1983 liability based on a policy or custom of failing to train police officers. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *Muhlenberg*, 269 F.3d at 215. "A municipality's failure to train its police officers can subject it to liability, however, 'only where [it] reflects a 'deliberate' or 'conscious' choice by [the] municipality'." *Muhlenberg*, 269 F.3d at 215 (citing *City of Canton, Ohio*, 489 U.S. at 389).

In the present case, Plaintiff has not presented any evidence supporting the claim that the Moving Defendants had a policy or custom authorizing or encouraging the Responding Officers to use excessive force. In addition, there is no evidence showing a deliberate choice by the Moving Defendants to fail to train police officers on the appropriate and constitutional limits of force. To the contrary, the Moving Defendants have come forward with undisputed evidence showing that the Department established a training policy consistent with the New Jersey Attorney General's Use of Force Policy, which prohibits the use of excessive force. (Lloyd Cert, paragraphs 13 – 18). Therefore, the Court finds that there is no genuine dispute as to whether the

Moving Defendants established a policy or custom authorizing or encouraging the Responding Officers to use excessive force and whether the Moving Defendants made a deliberate choice to fail to train police officers on the use of force.

## IV.     Conclusion

For the reasons above, Moving Defendants' motion for summary judgment is granted. An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated: February 25, 2011